NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GILBERT THOMAS GREENFIELD,      :
JR.,                            :
                                :   Civil Action No. 09-4983 (DMC)
            Plaintiff,          :
                                :
                                :
            v.                  :   OPINION
                                :
JON CORZINE, et al.,            :
                                :
            Defendants.         :

APPEARANCES:

     GILBERT THOMAS GREENFIELD, JR., Plaintiff pro se
     #375
     Special Treatment Unit
     30-35 Hackensack Avenue, P.O. Box 699
     Kearny, New Jersey 07032-0699

CAVANAUGH, District Judge

     Plaintiff, Gilbert Thomas Greenfield, Jr. ("Greenfield"), a
civilly committed person under the New Jersey Sexually Violent
Predator Act ("SVPA"), currently confined at the Special
Treatment Unit in Kearny, New Jersey, seeks to bring this action
in forma pauperis.  Based on his affidavit of indigence, the
Court will grant plaintiff's application to proceed in forma
pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a)(1), and order
the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint, pursuant
to 28 U.S.C. §§ 1915(e)(2), to determine whether it should be
dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary
relief from a defendant who is immune from such relief.  For the
reasons set forth below, the Court concludes that the Complaint
should proceed in part.

I.   BACKGROUND

Greenfield brings this civil action, pursuant to 42 U.S.C. §
1983, against the following defendants: Jon Corzine, former
Governor of New Jersey; Ann Milgram, former Attorney General of
the State of New Jersey; George Hayman, Commissioner of the New
Jersey Department of Corrections ("NJDOC"); Grace Rogers, former
Superintendent of the Adult Diagnostic & Treatment Center
("ADTC"), which oversees the operations of the Special Treatment
Unit ("STU") where plaintiff is committed; Jennifer Velez,
Commissioner of the New Jersey Department of Human Services
(NJDHS); John Main, Director of the Ann Klein Forensic Center;
Merril Main, Ph.D., Clinical Program Director for the STU; Paul
Lagana, former Ass't. Superintendent of ADTC; Cindy Sweeney,
former Ass't. Supeintendent of ADTC; Natalie Barone,
Administrator Psychology Services; Bernard Goodwin, Administrator
of the ADTC; Shantay Brain Adams, Unit Director at STU Kearny
facility; Tina Silletti-Spagnuolo, Unit Director at the STU-
Annex; Jacquelyn Ottino, Program Coordinator Team III; Robert
Carlson, Clinical Psychologist I; Brian Friedman, Ph.D., Clinical
Psychologist II; Nicole Palillo, Clinical Psychologist III; Tesa

2

Kearney Simms, Supervisor of Recreation; Terri Roth, Supervising
Rehabilitation Counselor; Louis Norton, Supervising
Rehabilitation Counselor; James Whalen, Substance Abuse
Counselor; Tyrone Toliver, Substance Abuse Counselor; John and
Jane Does (1-50), responsible for the facilitating of process
groups and psycho-educational modules, as well as generating
reports and evaluations for the inmate involved; John and Jane
Does (51-80), responsible for the administration of policies and
practices, staff safety, and the orderly running of the wings and
institution; John and Jane Does (81-100). (Complaint, Caption,
¶¶ 4.2 through 4.28). The following factual allegations are
taken from the Complaint, and are accepted for purposes of this
screening only. The Court has made no findings as to the
veracity of plaintiff's allegations.

Greenfield contends that he was civilly committed based on
principles of thought rather than behavioral defect. Before he
was scheduled to be released on parole Defendant Rogers placed an
administrative hold on plaintiff and referred him for commitment.
Greenfield alleges that the decision to refer him for commitment
was not based on the law or his behavior. He also complains that
he was denied the right to be present or represented at the

3

hearing on his temporary commitment order.[1]  (Compl., ¶¶ 5.4 -
5.8).

Greenfield alleges that defendant Carlson referred plaintiff
for civil commitment despite comments at the commitment interview
that plaintiff's treatment has diminished his risk to re-offend,
and that it was unfair to plaintiff.  (Compl., ¶ 5.9).

The Treatment Process Review Committee ("TPRC") issued a
report on plaintiff 60 days after his 2008 yearly hearing, which
noted that Greenfield was doing well in his treatment, but that
his risk to re-offend will not change in the future unless
plaintiff gets sick or old.  (Compl., ¶ 5.10).

Greenfield alleges that he asked Governor Corzine on live
New Jersey radio, "Why the State is giving million of dollars to
the NJDOC and NJDHS for a program that is not working?"  The
Governor allegedly replied that it was his responsibility as
Governor to protect the children of the State, and that while
there may be no proof that the program works, the need to protect
the public outweighs the rights of the offender.  (Compl., ¶
5.11).

Greenfield complains that visitation has been reduced from
12 visits per month to 10 visits per month.  He also states that
he is not serving a punitive sentence, therefore, he should be

_____

[1]  These allegations are raised in Greenfield's pending
federal habeas petition in this district court, <u>Greenfield v.
Department of Corrections, et al.</u>, Civil No. 09-1969 (JLL).

4

treated as though he is a patient in a hospital who are allowed daily and frequent visits with their families.  (Compl., ¶¶ 5.12, 5.13).

On or about August 21, 2009, defendants allegedly locked down the facility for one resident's behavior.  During the lockdown, defendants searched Greenfield's personal property and kept plaintiff in lock down status for 50 hours in a cell with no air and with a room temperature of 90 degrees.  Defendants also allegedly call fire drills routinely to get all of the residents out of the cells so that surprise searches can be performed. (Compl., ¶¶ 5.14-5.16).

On June 6, 2006, Greenfield was placed in a disciplinary lock-up by the Special Operations Group because NJDOC officers found a broken razor in plaintiff's bed area.  Greenfield and others claimed that the razor was not plaintiff's, that plaintiff had just moved to the bed area, and that the inmate who had the bed before plaintiff was found to have an exact match to the broken razor in his possession.  Greenfield alleges that he was placed in "map" to get him out of the Annex facility.  He remained on "map" status for 60 days.  In addition, defendant Simms wrongly accused Greenfield of trying to access the internet even though plaintiff's computer was not "internet capable" and was not plugged into anything.  (Compl., ¶¶ 5.17-5.22).

On February 1, 2007, defendant Merril Main openly admitted in a wing meeting that Greenfield and others would never be getting out.  Main also admitted in other meetings that he was deliberately giving separate and better treatment to the resident population of the STU Annex facility.  Greenfield complains that Main is violating his constitutional rights by telling plaintiff that his number one priority is to protect the public. Greenfield contends that this shows bias.  (Compl., ¶¶ 5.23-5.25).

Greenfield further complains that defendant Lagana did not file a complaint as he said he would after Greenfield had gone to the presses to have the abuse at the STU investigated. Greenfield told his public advocate about his situation, and the public advocate called a treatment team meeting.  Since that time, however, plaintiff has been subjected to unfair and biased treatment.  (Compl., ¶¶ 5.26-5.27).

In February 2007, defendant Silletti-Spagnulo approached plaintiff saying to him that she disappointed with plaintiff for going to the press because she did not think there was any abuse going on at the STU.  (Compl., ¶5.28).

Greenfield also complains that he was denied vocational and educational opportunities while he was in the caged area and continuing on a daily basis.  He also requested to continue his court-ordered sex offender specific treatment while in "map" but was denied.  (Compl., ¶¶ 5.31-5.32).

Next, Greenfield alleges that, in February 2007, the NJDHS
staff deliberately provided false information about plaintiff's
progress to the Treatment Process Review Committee ("TPRC").
Based on this false information, the TPRC waited a year to render
its finding on Greenfield's annual review, preventing Greenfield
from addressing therapeutic issues for his continued progress
through the program.  Moreover, the TPRC's findings allegedly
show that Greenfield's behavior does not match the clinical
diagnosis given to him.  Greenfield filed a grievance and was
told by defendant Friedman that if plaintiff has an issue with
the facts then he should address them in court.  (Compl., ¶¶
5.33-5.36).

Greenfield also alleges that he did not have his 2009 annual
review by the TPRC until three weeks after the finding was issued
in his 2008 hearing.  Greenfield was denied treatment reports or
a TPRC assessment meeting for more than 18 months, resulting in
plaintiff being denied the right to process through the phases of
treatment.  (Compl., ¶¶ 5.37-5.39).

Greenfield complains that defendants have refused to allow
plaintiff to have a computer and a cell phone, which would enable
him to have frequent communications with his family.  Defendants
allegedly have limited Greenfield to only minimal sexual deviancy
treatment, and have denied him access to "mental health
treatment" for plaintiff's alleged "mental abnormality or
personality disorder."  (Compl., ¶¶ 5.40-5.41).

7

Greenfield further complains that defendants have denied him access to adequate sex offender treatment because each class or module offered by the STU does not provide a syllabus or tests in the following classes: Anger Management, Social Skill, Relapse Prevention I, II and III, Communication Skills, Victim Empathy, Substance Abuse, Family of Origin, and Personal Victimization. Defendants also failed to provide Greenfield with pens, paper, journals and logs for participation in classes. Greenfield contends that the grading procedure for these classes or courses vary from class to class, making grading subjective, arbitrary and capricious. He further asserts that inconsistent grading is done to keep plaintiff confined. Greenfield has been required to retake classes that he successfully completed either at the STU or at the Adult Diagnostic and Treatment Center ("ADTC"). (Compl., ¶¶ 5.42-5.45).

Moreover, plaintiff is not treated, assessed, or evaluated individually, nor does he have a personal treatment plan to enable him to advance through the program. When Greenfield complains or questions class content or instructions, he is labeled "disruptive" or "argumentative" to suppress any treatment gains. Staff has been ordered not to assist Greenfield with his class or module assignments. Greenfield is denied any "feedback" from his classes and module assignments to enable him to progress through treatment. He was denied "Assessment Instruments or Evaluations" before starting the treatment program and is being

8

forced to attend classes below his competency level.  Greenfield
states that the diagnosis of "sexual sadism and psychopathy" was
based on hearsay reports without a personal interview.  He is
forced to attend extra classes outside of his scheduled trimester
classes when the module instructors do not show up.  (Compl., ¶¶
5.46-5.48, 5.55-5.63).

Plaintiff alleges that his class schedule routinely
conflicts with recreational activities, which are needed for
stress reduction, relaxation, and overall "wellness building."
(Compl., ¶ 5.54).

Greenfield also complains that during a polygraph he was
asked to divulge information like sexual history, and names,
dates and places of victims for alleged crimes that he was never
convicted.  He is forced to retake these polygraph tests even
though he was told that they cannot be used in commitment court
or relied upon by the doctors when rendering a report.  (Compl.,
¶¶ 5.64, 5.65).

Further, Greenfield states that the STU's phase system is
used to prolong the release of plaintiff, and that defendants
selectively advance some residents over others even if they are
not qualified.  (Compl., ¶¶ 5.66, 5.67).  Greenfield is forced to
participate in religious based substance abuse treatment, even
though he has requested non-religious based treatment and his
overall treatment is based on cognitive behavioral therapy.
(Compl., ¶ 5.68).

Consequently, Greenfield asserts that he is forced to live in an overly restrictive, abusive and punitive environment, even though he is no longer serving a criminal sentence. The lack of trained and qualified staff denies plaintiff an effective diagnosis and prevents his progress through the treatment program so that he can be reintegrated into the community. This allegedly violates the "least restrictive alternatives" doctrine. (Compl., ¶¶ 5.49-5.53).

Greenfield states that he was denied the right to participate in religious services while he was in "map" for 60 days. (Compl., ¶ 5.69). While Greenfield was in the "caged area" he was denied access to the law library and legal supplies. Greenfield alleges that he is generally denied meaningful access to the law library, and that the library equipment and staff are either broken or don't function properly. Plaintiff is denied access to a computer with internet capabilities. (Compl., ¶¶ 5.70-5.72).

Finally, Greenfield alleges that defendant Main openly admitted that he is deliberately giving better treatment to resident population of STU Annex. Greenfield also contends that several inmates have been advanced to level or phase 4 of the treatment without consideration of their prior treatment, their current level of dangerousness, and their future level of dangerousness. (Compl., ¶¶ 5.73-75).

10

Greenfield asserts seven claims for relief: (1) that his continued confinement is punitive in nature for the sole purpose of keeping him confined, in violation of Double Jeopardy, the ex post facto and due process clauses of the U.S. Constitution, and the Eighth and Fourteenth Amendments; (2) that defendants have abused their authority by an unreasonable restriction on plaintiff's right to be free from repressive and discriminatory conditions in violation of the Fifth, Eighth and Fourteenth Amendments; (3) denial of educational and vocational treatment plans; (4) failure to provide adequate mental health treatment for plaintiff's alleged "mental abnormality or personality disorder"; (5) denial of religious exercise; (6) denial of access to the courts; and (7) defendants arbitrarily applied policies and procedures deter plaintiff's release from confinement. (Compl., ¶¶ 6.1-6.7).

Greenfield seeks declaratory and injunctive relief, as well as an award of compensatory and punitive damages for every day that plaintiff has been held under confinement as a sexually violent predator. As to the injunctive relief, Greenfield asks that defendants, Hayman, Goodwin and their agents, be compelled to change the policy regarding ownership or possession of personal computers and allow plaintiff to purchase a personal computer, and to permit plaintiff to communicate with his family, the court, schools and the state and federal governments and do legal research with his own personal computer. Greenfield also

11

asks that defendants Whalen and Toliver be compelled to immediately remove plaintiff from the current substance abuse group and create a specialized, non-religious based substance abuse treatment program for plaintiff. (Compl., Prayer for Relief).

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This action is subject to <u>sua</u> <u>sponte</u> screening for dismissal under 28 U.S.C. § 1915(e)(2)(B), for plaintiffs proceeding pro se, and which requires the Court to identify cognizable claims and to <u>sua</u> <u>sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). <u>See</u> <u>also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[2] Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two

---

[2] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id</u>. at 1948. The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible. <u>Id</u>. at 1949-50; <u>see</u>

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,

___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides

the "final nail-in-the-coffin" for the "no set of facts" standard

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that

applied to federal complaints before Twombly. Fowler, 2009 WL

2501662, *5. The Third Circuit now requires that a district

court must conduct the two-part analysis set forth in Iqbal when

presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated. The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.] In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief. A complaint has to
> "show" such an entitlement with its facts. See Phillips,
> 515 F.3d at 234-35. As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at
> 1949-50]. This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

---

[3]   In Conley, as stated above, a district court was
permitted to summarily dismiss a complaint for failure to state a
claim only if "it appear[ed] beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief. Id., 355 U.S. at 45-46. Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.  SECTION 1983 ACTIONS

Greenfield brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, it appears that all named defendants are state actors.

16

IV.   ANALYSIS

A.   Continued Confinement Claims

With respect to Greenfield's claims concerning his continued confinement as violative of his right against Double Jeopardy, application of ex post facto laws, and denial of due process, this Court finds that such claims essentially challenge plaintiff's continued confinement and are thus more appropriately habeas claims that must be dismissed from this action.

This Court observes that Greenfield has filed a federal habeas petition challenging his continued confinement under the SVPA.  See Greenfield v. Department of Corrections, et al., Civil No. 09-1969 (JLL).  Greenfield's habeas action is presently pending.  This Court further notes that Greenfield did not raise these claims in his pending habeas matter, except with the possible exception of a due process claim.[4]

Accordingly, this Court will dismiss the present claims in this action challenging plaintiff's continued confinement for lack of jurisdiction.

_____

[4] Greenfield argues that his commitment violates the prohibition against double jeopardy and ex post facto laws. However, the Supreme Court held that commitment under the sexually violent predator statutes is not punitive and therefore, it does not violate the Double Jeopardy nor the Ex Post Facto Clauses.  See Kansas v. Hendricks, 521 U.S. 346 (1997); Seling v. Young, 531 U.S. 250 (2001).  Accordingly, even if he had brought these claims in his pending habeas matter, it is likely that he would not prevail on these claims in his habeas action.

B.   <u>Denial of Access to the Courts Claim</u>

Greenfield alleges that he has been denied access to the courts in violation of his First and Fourteenth Amendment rights. Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[5]  The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  <u>Id</u>. at 825.  "'[T]he touchstone ... is meaningful access to the courts.'" <u>Peterkin v.</u>

_____

[5]  The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

18

Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430
U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental
constitutional right of access to the courts requires prison
authorities to assist inmates in the preparation and filing of
meaningful legal papers by providing prisoners with adequate law
libraries or adequate assistance from persons trained in the
law."  The right of access to the courts is not, however,
unlimited.  "The tools [that Bounds] requires to be provided are
those that the inmates need in order to attack their sentences,
directly or collaterally, and in order to challenge the
conditions of their confinement.  Impairment of any other
litigating capacity is simply one of the incidental (and
perfectly constitutional) consequences of conviction and
incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996)
(emphasis in original).  Similarly, a pretrial detainee has a
right of access to the courts with respect to legal assistance
and participation in one's own defense against pending criminal
charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th
Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31,
2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th
Cir. 2000) (pretrial detainee who rejects an offer of court-
appointed counsel in satisfaction of the Sixth Amendment right to
counsel has no alternative right to access to a law library);
Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998)

(same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

Here, Greenfield fails to allege any actual injury as a result of the alleged inadequacy of the law library and lack of legal supplies while he was confined in the "caged area."  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action.  Furthermore, Greenfield does not articulate how the allegedly inadequate law library or lack of legal supplies hindered his efforts to either pursue this claim, his pending federal habeas petition, or defend himself in any pending state proceedings.  Therefore, his claim alleging denial

20

of access to the courts based on an alleged failure to provide an adequate law library and legal supplies will be dismissed without prejudice for failure to state a claim at this time.

C.   Denial of Free Religious Exercise Claim

Next, Greenfield alleges that he was denied the right to participate in religious services while he was in "map" for 60 days in 2006.  He does not state what religious services he was precluded from attending.[6]

The First Amendment, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Conditions of confinement claims arise under the due process clause of the Fourteenth Amendment for pretrial detainees or civil detainees, such as those who have been committed to a state facility.  See Youngberg v. Romeo, 457 U.S. 307, 312 (1982).  In evaluating the constitutionality of conditions or restrictions of detention, the inquiry is whether the conditions amount to punishment of the detainee.  Bell v. Wolfish, 441 U.S. 520, 536 (1979).  "[T]he

---

[6]  The Court notes that Greenfield has complained about a substance abuse group he is required to attend because it is religious-based.  Thus, it is not clear from the Complaint what religious faith Greenfield practices, if at all.

fact that detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment." Id. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." Id. at 547. Thus, to state a First Amendment claim, an inmate must establish allegations that indicate a constitutional violation and show that the government has no legitimate penological interest in the restrictions it imposes. See Lewis, 518 U.S. at 361; Bell v. Wolfish, 441 U.S. at 551-52.

To establish his denial of religion claim, Greenfield must demonstrate that the restriction on religious practice was not reasonably related to a legitimate, penological interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). This reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4)

whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Greenfield's bare allegation is not sufficient to state a First Amendment free exercise claim.  He fails to allege the type of religious service that allegedly was restricted or that such restriction prevented him from practicing his faith.  Greenfield makes only a general reference to "religious services" and does not allege that such services were necessary for the practice of his unknown faith.  Moreover, it is plain from the allegations in the Complaint that the restriction was only for the limited time that Greenfield was in "map" and therefore, the mere fact that he could not leave the "map" area does not convert the restriction on religious services into punishment.  See Bell v. Wolfish, 441 U.S. at 536.

Moreover, the alleged restriction occurred in 2006, as appears from the face of the Complaint, more than three years after Greenfield filed this action.  Consequently, it appears that this claim is now time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation

omitted).   Although the statute of limitations is an affirmative

defense which may be waived by the defendant, it is appropriate

to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil

rights claim whose untimeliness is apparent from the face of the

Complaint.   See, e.g., Jones v. Bock, 549 U.S. 199, 214-15

(2007)(if the allegations of a complaint, "for example, show that

relief is barred by the applicable statute of limitations, the

complaint is subject to dismissal for failure to state a claim");

see also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding,

under former § 1915(d) in forma pauperis provisions, that sua

sponte dismissal prior to service of an untimely claim is

appropriate since such a claim "is based on an indisputably

meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315

(3d Cir.2007)("district court may sua sponte dismiss a claim as

time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent

from the complaint that the applicable limitations period has

run")(citing Jones v. Bock, Pino v. Ryan)(not precedential);

Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th

Cir. June 12, 2001) (unpub.) (applying Pino to current §

1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.);

Johnstone v. United States, 980 F. Supp. 148 (E.D. Pa. 1997)

(applying Pino to current § 1915(e)).

     Federal courts look to state law to determine the

limitations period for § 1983 actions.   See Wallace v. Kato, 549

U.S. 384, 387-88 (2007).   Civil rights or constitutional tort

24

claims, such as that presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See Wallace, supra; Jones v. R.R. Donnelley & Sons, 541 U.S. 369, 382 (2004)(federal civil rights claims under §§ 1981, 1982, 1983 and 1985 are subject to the state statute of limitations for personal injury actions); Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs plaintiffs' claims under §§ 1983 and 1985.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action.  Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

Moreover, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."  Wallace v. Kato, 549 U.S. at 388 (emphasis in original).  A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of

his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.
1982). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38
F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is
irrelevant. Rather, the question is whether the knowledge was
known, or through reasonable diligence, knowable. Moreover, the
claim accrues upon knowledge of the actual injury, not that the
injury constitutes a legal wrong." Fassnacht v. United States,
1996 WL 41621 (E.D. Pa. Feb. 2, 1996)(citing Oshiver, 38 F.3d at
1386).

Here, Greenfield admits the alleged religious restriction
occurred in 2006 while he was confined in "map." Thus, it is
plain from the face of the Complaint that Greenfield knew, or had
reason to know, in 2006, that he may have a claim against
defendants for allegedly denying him access to religious
services. However, Greenfield did not file this federal action
until September 28, 2009, three years later.

Moreover, upon careful review of the Complaint, there is
nothing alleged to support an argument that Greenfield would be
entitled to equitable tolling of the statute of limitations. Any
claim that Greenfield now alleges concerning a restriction on
religious services accrued when the incident occurred in 2006.
Greenfield alleges no facts or extraordinary circumstances that
would permit statutory or equitable tolling under either New

26

Jersey or federal law.[7]  Nor does Greenfield plead ignorance of

the law or the fact of his confinements (neither excuse being

sufficient to relax the statute of limitations bar in this

instance) as the basis for delay in bringing suit.  Greenfield

has not offered any explanation for his lack of diligence in

pursuing this claim long after it had expired.  This omission

strongly militates against equitable tolling of the statute of

limitations.  Therefore, the Court finds that the § 1983 claim

alleging denial of religious practice in violation of the First

---

[7]  New Jersey statutes set forth certain bases for
"statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing
tolling because of minority or insanity); N.J.S.A. § 2A 14-22
(detailing tolling because of nonresidency of persons liable).
New Jersey law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.
See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.
     When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:
     (1) where a defendant actively misleads a plaintiff
     with respect to her cause of action; (2) where the
     plaintiff has been prevented from asserting her claim
     as a result of other extraordinary circumstances; or
     (3) where the plaintiff asserts her claims in a timely
     manner but has done so in the wrong forum.

Id. n.9.

and Fourteenth Amendments is time-barred and must be dismissed
with prejudice.

D.   Remaining Claims

    Greenfield also makes various other claims, namely, (1) that
he has been denied educational and vocational treatment plans,
(2) that defendants failed to provide adequate mental health
treatment for plaintiff's alleged diagnosis of "mental
abnormality or personality disorder," (3) arbitrary application
of policies and procedures to deter plaintiff's release to the
community, and (4) denial of owning a personal computer with
Internet access for communication with family and legal research.
Although not expressly alleged, it appears that Greenfield also
may have a retaliation claim in violation of his First Amendment
rights.

    The bulk of Greenfield's allegations contend that his
confinement is overly restrictive, abusive and punitive.  He has
been denied an individual treatment plan, assessment, and
evaluation reports that would enable him to advance through the
program and be released into the community.  He contends that the
courses are graded in an arbitrary and capricious manner, and
that the program and classes conflict with recreational
activities.  Greenfield is forced to participate in a religious-
based substance abuse program, and there is a lack of qualified
staff that prevents his progress.  Indeed, Greenfield alleges
that several of the defendants have admitted that the resident

population of the STU/Annex are treated better and that plaintiff would never get out.

This Court is inclined to allow these claims to go forward because plaintiff has alleged that defendants acted in an arbitrary and capricious manner and have denied or impeded plaintiff's treatment plan for no apparent legitimate reason.

Moreover, it appears that Greenfield has alleged retaliation by defendants after he spoke to the press about the situation for sexually violent predators. Having reviewed the Complaint, it appears that many of the allegations can be construed as retaliatory conduct by defendants against Greenfield for expressing his First Amendment right to free speech. For instance, he was denied treatment reports and his TPRC assessment meeting for more than a year afterwards. His visitation was reduced from 12 to 10 visits aper month. His room and personal property were searched for no apparent reason. Greenfield is labeled "disruptive" and "argumentative' if he questions matters in class, etc.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from

29

exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint and
above, if true, Greenfield may be able to support a claim of
retaliation.  He alleges that shortly after he spoke to the press
on the radio, and continuing, defendants have been arbitrary and
capricious in providing plaintiff with an appropriate treatment
plan, as well as other retaliatory conduct. A prisoner's ability
to file grievances and lawsuits against prison officials is a
constitutionally protected activity for purposes of a retaliation
claim.  See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir.
1981)(retaliation for exercising right to petition for redress of
grievances states a cause of action for damages under the
constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir.
1995)(prison officials may not retaliate against an inmate for
complaining about a guard's misconduct), cert. denied, 516 U.S.
1084 (1996).  Therefore, because Greenfield appears to allege
that defendants retaliated against him for talking to the press

about the conditions at the STU in Kearny, New Jersey, he appears to meet the requisite elements of a retaliation claim. Namely, Greenfield has alleged (1) a constitutionally protected activity, (2) that he was subjected to adverse action by defendants, and (3) that the filing of grievances was the motivating factor in defendants' decision to take adverse action against plaintiff. Accordingly, the Court will allow this retaliation claim to proceed at this time.

As to having a personal computer and Internet access, it would appear that Greenfield cannot support a claim for relief. Greenfield is unable to demonstrate a Fourteenth Amendment due process violation unless he can identify "a liberty or property interest protected by the constitution" of which he was deprived. Wright, 219 F.3d at 913. Due process rights to life, liberty or property can arise directly from the Constitution or can be created by state law. Here, Greenfield alleges no constitutional right to possess a personal computer at the STU and alleges no state-created right to which due process attaches. Thus, Greenfield has failed to allege a Fourteenth Amendment substantive due process claim pertaining to the restriction on computer ownership. Iqbal, 129 S.Ct. at 1949-50; Twombly, 550 U.S. at 555-57, 570; Robinson v. Joya, 2010 WL 890437 * 11, 12 (E.D. Cal. March 8, 2010).

Greenfield also fails to state a claim for violation of his right to equal protection under the law with regard to the

31

personal computer restriction because he fails to allege that he is a member of an identifiable class, that he was intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)(citations omitted).  To assert a valid equal protection claim, Greenfield must allege: (1) he is a member of an identifiable class; (2) sufficient facts to show defendants treated him differently from other similarly situated persons; and (3) defendants acted with an intent or purpose to discriminate against him based on his membership in the identifiable class.  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).

Greenfield cannot demonstrate any of these factors. Therefore, the Court will dismiss this claim.

E.   Motion for Preliminary Injunction

Greenfield also filed a motion for a preliminary injunction. To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to

the defendants]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, at least with respect to several of his claims regarding continued confinement, denial of access to courts, and denial of religious practice, Greenfield has not alleged facts to satisfy the first requirement that he may be likely to succeed on the merits. Moreover, Greenfield fails to articulate irreparable harm, and thus, cannot satisfy the second mandatory requirement. Indeed, Greenfield contends that his limited access to the courts (namely, through the denial of a personal computer with Internet access for legal research) has caused and will cause irreparable harm. Because this Court already has determined that Greenfield's denial of access to the courts claim must be dismissed at this time for lack of actual injury, plaintiff

33

cannot show irreparable harm.  Consequently, because Greenfield is unable to establish all four factors necessary for preliminary injunctive relief as required, the motion for preliminary injunctive relief will be denied at this time.

V.   CONCLUSION

For the reasons set forth above, plaintiff's claims alleging continued confinement and denial of religious services will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claims alleging denial of access to the courts and denial of a personal computer with Internet access will be dismissed without prejudice for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  All remaining claims will be allowed to proceed at this time.  Finally, Greenfield's motion for a preliminary injunction will be denied without prejudice.  An appropriate order follows.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 5/6/10